IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TARA L. LONG and TODD J. LONG, Administrators of the Estate of TAMMY E. LONG, Deceased | : : : CIVIL ACTION : NO. 15-cv-01447 |
| Plaintiff, | : : |
| v. | : : |
| ARMSTRONG COUNTY, d/b/a ARMSTRONG COUNTY JAIL and DAVID HOGUE | : (ELECTRONICALLY FILED) : : JURY TRIAL DEMANDED |
| Defendants. | : : |

**DEFENDANTS ARMSTRONG COUNTY AND DAVID HOGUE'S
MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS
PLANTIFF'S COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)
AND/OR
MOTION TO STRIKE PORTIONS OF PLAINTIFF'S COMPLAINT AS IMMATERIAL
AND IMPERTINENT PURSUANT TO FED. R. CIV. P. 12(f)**

Defendants, Armstrong County, d/b/a Armstrong County Jail ("Armstrong County" or "ACJ") and David Hogue ("Hogue") move pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss Plaintiffs' Complaint with prejudice because it fails to set forth a claim for which relief may be granted. Alternatively, if the Complaint is not dismissed with prejudice, Defendants move, pursuant to Federal Rule of Civil Procedure 12(f) to strike those portions of Plaintiff's Complaint that refer to post-incident investigations as such information is immaterial and inadmissible.

As set forth below, Plaintiff in the present case seeks to impose liability upon Armstrong County Prison and former Warden David Hogue under a §1983 'state-created danger' theory of liability for failing to protect their decedent Tammy Long, when she and her live-in boyfriend Terry Slagle invited David Crissman, an escaped prisoner from ACJ and an acquaintance of

1

Long and Slagle, into their home. While the allegation that underlies this claim - that Crissman murdered Long after Slagle left to go to work, if true, is tragic - it cannot serve as the basis for a viable 'state-created danger' claim as a matter of law.[1] Namely, as stated by the Supreme Court in the seminal 'state-created danger' case, *DeShaney v. Winnebago County,* 489 U.S. 189 (1989):

> Judges and lawyers, like other humans, are moved by natural sympathy in a case like this to find a way for [Long's family] . . .to receive adequate compensation for the grievous harm inflicted upon [Long]. But before yielding to that impulse, it is well to remember once again that the harm was inflicted not by [ACJ or Warden Hogue], but by [Robert Crissman].

*Id.* at pp. 202-203.

Likewise, as the Third Circuit has made clear, when assessing proposed state-created danger (1) public entities such as correctional facilities are not the guarantors of safety from private violence, *Bright v. Westmoreland County,* 443 F. 3d 276 (3rd Cir. 2006), (2) the 14th Amendment applies to the *affirmative* misuse of governmental power, not a failure to act such as alleged in the present case, *Sanford v. Stiles,* 456 F. 3d 298 (3rd Cir. 2006), and (3) there is no special relationship or duty to protect the general public. *Commonwealth Bank & Trust Co., N.A. v. Russell*, 825 F.2d 12 (3d Cir. 1987) ("*Russell*").

Applying the legal standard to the facts of the present case, Plaintiff's 'state-created danger' claim fails for multiple reasons. First, the sad end to this incident – that Crissman would unexpectedly flee from the prison; go to this specific home; be freely invited into the house by his acquaintances Tammy Long and Terry Slagle; and sometime later, allegedly killed Long – was not foreseeable.

---

[1] Long's death, and Crissman's alleged involvement therein, is the subject of an ongoing criminal case and Crissman is currently awaiting trial on charges related to Long's death.

Second, the actions of the Defendants is not the "conscience-shocking" behavior that is required to support a state-created-danger claim.

Third, there was no "special relationship" or special duty established between Defendants and Long that made Defendants responsible for the criminal actions of Inmate Crissman. Rather, Ms. Long, as a matter of law, was no more vulnerable to the criminal actions of an escaped prisoner, then any member of the public at large. *Russell*, 825 F.2d 12 (3d Cir. 1987).

Fourth, the actions or inactions of Defendants did not create a danger to Long that rendered her *more vulnerable* to danger, than had Defendants done nothing at all.

In short, if it is proven in the pending criminal case that Crissman did murder Ms. Long – it is sad; however, as cautioned by the Supreme Court in *DeShaney,* and applied by the Third Circuit in *Sanford*, *Bright*, and *Russell*, the 14th Amendment does not recognize a cause of action under facts such as are present in the instant case – no matter how sympathetically Long's claims may be. Indeed, as more fully discussed below, there are multiple decisions that clearly show that the claims asserted here fail as a matter of law. *See, e.g., Commonwealth Bank & Trust Co., N.A. v. Russell*, 825 F.2d 12 (3d Cir. 1987) (Defendant County's Motion to Dismiss granted as §1983 'state-created-danger' claim based upon escaped prisoner's murder of plaintiff's decedents fails as a matter of law).

I.  **QUESTIONS PRESENTED**

WHETHER PLAINTIFF'S COMPLAINT FAILS TO STATE A CLAIM FOR WHICH RELIEF MAY BE GRANTED?

SUGGESTED ANSWER: YES

II. **STATEMENT OF PLAINTIFF'S PLED FACTS**

For purposes of the present Motion to Dismiss, the Court must accept as true all factual allegations made in Plaintiff's Complaint. *Scheuer v. Rhodes,* 416 U.S. 236 (1974).

### ACJ's Trustee Program

At Armstrong County Jail ("ACJ") there exists an inmate trustee program whereby certain trusted inmates, referred to as "trustees", are assigned tasks including laundry, cleaning, and maintaining the exterior of the facility. (Compl., Doc. 1, at ¶ 18.) Trustees are housed in a separate unit and some are given outside privileges, allowing them to perform work outside of the jail. (Id. at ¶ 19.) Trustees are supervised by security cameras while working outside of the jail's four walls. (Id. at ¶ 21.)

One of the tasks performed by trustees is referred to as "tray duty." (Id. at ¶ 22.) Trustees performing tray duty wait just outside of the jail's kitchen door for a van to arrive delivering meals on trays. (Id)

### Crissman's Incarceration and Criminal History

On July 23, 2015, Robert Crissman ("Crissman") was incarcerated at ACJ for violating his parole. (Id. at ¶ 16.) Crissman's criminal history included charges of theft, criminal trespassing, breaking and entering, driving under the influence, and use/possession of drugs and drug paraphernalia. (Id. at ¶ 14.) Crissman had never been arrested for a violent crime.

On July 29, 2015, Crissman was made a "trustee." (Id. at 25) On July 30, 2015, Crissman volunteered for and was subsequently assigned to tray duty. (Id at ¶ 25.)

On July 29, 2015, in accordance with their tray duty responsibilities, Crissman and two other inmate trustees were permitted to walk down a hall, through several sets of doors which were remotely opened from a central location, to the outside of the jail. (Id. at ¶ 28.) The inmates were monitored by Central Control via cameras. (Id. at ¶ 29.)

As the food van arrived, Crissman unexpectedly and without warning ran past the van towards the gun range and eventually into the woods and outside of the jail's premises. (Id. at ¶

4

31.) Another trustee immediately notified a correctional officer that Crissman had fled. (Id. at ¶ 32.) The correctional officer radioed to Central Control who immediately notified the on-duty lieutenant. (Id.) Initial attempts by the lieutenant to contact the warden were not immediately successful. (Id.) Within 15 minutes of Crissman fleeing from ACJ, the on-duty lieutenant contacted 911. (Id. at ¶ 33.)

While Kittanning Police were being contacted by the jail, Crissman ran to the residence of an acquaintance, Terry Slagle. (Id. at ¶ 34.) Mr. Slagle lived with Tammy Long, who was inside the home with Slagle when Crissman arrived. (Id.) Mr. Slagle and Ms. Long invited Crissman into their home and, at 7:20 a.m., Slagle went to work, leaving Long at home with their acquaintance Crissman. (Id. at ¶ 36.) It is alleged that, after Slagle left for work, Crissman beat and strangled Long to death. (Id. at 37.)

At approximately 2:30 p.m. Slagle returned home from work and found Long's body. (Id. at ¶ 38.) Slagle subsequently contacted the Kittanning police. (Id.)

On July 31, 2015, at approximately 7:30 a.m., the Kittanning police were able to track, find, and capture Crissman after a high speed car chase. (Id. at 39.) Crissman was subsequently charged with the murder of Long and he is currently awaiting trial. (Id. at 39.)

### III. PROCEDURAL HISTORY

Plaintiff filed the present action on November 4, 2015 (Doc. No. 1-1) alleging four (4) causes of action, all in the nature of a §1983 'state-created-danger' claim with the only difference being that the first two counts are asserted against Armstrong County (wrongful death and survival respectively) and the second two claims are asserted against Warden Hogue (wrongful death and survival respectively).

On December 8, 2015, Defendants filed waivers of service of summons (Doc. Nos. 7 and 8), with their present response to Complaint being due on January 8, 2016.

### IV. <u>LEGAL STANDARD UNDER RULE 12(B)(6)</u>

Federal Rule of Civil Procedure 12(b)(6) provides that a complaint may be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law." *Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Generally, in ruling on a motion to dismiss, a district court relies on the complaint, attached exhibits, and matters of public record." *Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2007). In determining whether or not a motion to dismiss should be granted, a district court must accept as true the factual allegations in the complaint and construe all reasonable inferences in the light most favorable to the plaintiff. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). However, the Court need not accept a complaint's bald assertions, subjective characterizations, or legal conclusions. *Evancho v. Fischer*, 423 F.3d 347, 351 (3d Cir. 2005).

### V. <u>ARGUMENT</u>

#### A. <u>PLAINTIFF'S §1983 STATE-CREATED DANGER CLAIMS FAIL AS A MATTER OF LAW</u>

To maintain a civil rights action, a plaintiff must prove that defendants deprived her of a federal right while acting under color of state law. 42 U.S.C. § 1983. While governmental actors are not normally liable for injuries caused by private actors, they may be held liable for creating the danger. *DeShaney v. Winnebego County Dep't of Soc. Servs.*, 489 U.S. 189, 195, 109 S.Ct.

998, 103 L.Ed.2d 249 (1989). It is well established that a "State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause." *Id.* "The Due Process Clause forbids the state itself from depriving individuals of life, liberty, or property without due process of law, but its language cannot fairly be extended to impose an affirmative obligation on the State to ensure that those interests do not come to harm through other means. *Id.*

The Third Circuit has interpreted *DeShaney* to stand for the proposition that the "Due Process Clause imposes no affirmative duty to protect a citizen who is not in state custody." *Bright v. Westmoreland County*, 443 F.3d 276 (2006). A constitutional violation may, however, still occur "when state authority is affirmatively employed in a manner that injures a citizen or renders him 'more vulnerable to injury from another source than he or she would have been in the absence of state intervention.'" *Id.* (quoting *Schieber v. City of Philadelphia*, 320 F.3d 409, 416 (3d Cir. 2003)). "This complement to the *DeShaney* holding has come to be known in its progeny as the "state-created danger doctrine." *Id.*

To recover under a "state created danger" theory, Plaintiff must prove:

(1) "the harm ultimately caused was foreseeable and fairly direct;

(2) a state actor acted with a degree of culpability that shocks the conscience;

(3) a relationship between the state and the plaintiff existed such that the plaintiff was a foreseeable victim of the defendants acts, or a member of a discrete class of persons subjected to the potential harm brought about by the state's actions, as opposed to a member of the public in general; and

7

(4) a state actor affirmatively used his or her authority in a way that created a danger to a citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all." *Id.*

"The cases where the state-created danger theory was applied were based on discrete, grossly reckless acts committed by the state or state actors using their peculiar positions as state actors, leaving a discrete plaintiff vulnerable to foreseeable injury." *Kneipp v. Tedder*, 95 F.3d 1199 (3d Cir 1996) (quoting *Fagan v. City of Vineland*, 22 F.3d 1296 (3d Cir 1994)).

### 1. The Harm To Tammy Long Was Neither Foreseeable Nor Direct

To recover under a "state created danger" theory, Plaintiff must first prove that the harm ultimately caused was foreseeable and fairly direct. "[A] plaintiff adequately pleads the element of foreseeable harm by alleging 'an awareness on the part of the state actor that rises to [the] level of *actual knowledge* or an awareness *of risk* that is *sufficiently concrete* to put the actors on notice of the harm.'" *Phillips ex rel. Estate of Phillips v. Northwest Regional Communications*, 391 Fed.Appx. 160, 166 (3d Cir 2010) (quoting *Phillips v County of Allegheny*, 515 F.3d 224 (3d Cir. 2008)) (emphasis in original).

"State actors are not liable every time their actions set into motion a chain of events that result in harm." *Fetterman v. Westmoreland County Children's Bureau*, No. 2:15-cv-773, 2015 WL 5007952 (W.D. Pa. Aug. 20, 2015) (McVerry, J.) To show that the state official's conduct was a "fairly direct" cause of an injury, "the plaintiff must plausibly allege that state officials' actions precipitated or were the catalyst for the harm for which the plaintiff brings suit." *Id.* at 284-85. Where defendants' actions are "separated from the ultimate harm by a lengthy period of time and intervening forces and actions" they cannot be said to be "fairly direct." *Id.*

8

"[F]or purposes of the fairly direct requirement, it 'is insufficient to plead that state officials' actions took place somewhere along the causal chain that ultimately led to the plaintiff's harm.'" *D.M. ex re. Ray v. Philadelphia Housing Authority*, 613 Fed.Appx. 187 *3d Cir. 2015) (quoting *Henry*, 728 F.3d at 285.)). Harm is "fairly direct where the victim was an identifiable individual, rather than a random person with no known connection to the person causing the harm." *Fetterman*, 2015 WL 5007952 at *5.

"In sum, to adequately plead this narrow cause of action for municipal liability, it is incumbent upon Plaintiff to set forth *facts known to [defendants] in advance* regarding foreseeability and a fairly direct causal relationship between the municipal action and the harm…rather than merely relying on 20/20 hindsight after a tragedy has occurred." *Id.* (Emphasis added).

Here, Plaintiff has pled no facts demonstrating *actual knowledge* or an awareness *of risk* beforehand that is *sufficiently concrete* to have put defendants on notice that Ms. Long was at risk. There is no indication in Plaintiff's Complaint that Defendants had any knowledge of any risk of harm to Ms. Long. Ms. Long was nothing more than a "random person with no known connection to the person causing the harm." When Defendants placed Inmate Crissman in the trustee program they had no way of knowing that he posed a risk to Ms. Long or anyone else for that matter.

Moreover, Plaintiff has failed to establish the "fairly direct" requirement. Here, after Inmate Crissman escaped from ACJ, he traveled to the home of his acquaintance, Terry Slagle, who resided with his girlfriend, Ms. Long. (Doc. 1 at ¶ 34.) Slagle and Long invited Crissman into their home and, thereafter, Mr. Slagle left to go to work and Ms. Long agreed to give Crissman a ride into Kittanning. (*Id.* at ¶ 36.) Defendants' action in placing Inmate Crissman in

9

the trustee program was separated by the intervening actions of Ms. Long and Mr. Slagle in inviting Crissman into their home and allowing him to spend the day with Ms. Long.

Plaintiff's failure to plead facts sufficient to establish the "foreseeable" and "reasonably direct" element is fatal to their claim.

### 2. Defendants Did Not Act With A Degree Of Culpability That Shocks The Conscience

To recover under a "state created danger" theory, Plaintiff must also prove that the state actor acted with a degree of culpability that shocks the conscience. "The measure of what shocks the conscience is a legal question and there is no clear, calibrated standard. At one end of the spectrum, 'negligent behavior can never rise to the level of conscience shocking.'" *Id.* (quoting *Kaucher v. County of Bucks*, 455 F.3d 418, 425 (3d Cir 2006)). "At the other end of the spectrum are state actions 'intended to injure in some way unjustifiable by any government interest.' Between these extremes, the court must consider the context-specific circumstances of the particular case…" *Id.*

"In a case where state actors have the time to make unhurried judgments, the level of culpability required to shock the conscience is deliberate indifference." *Navolio v. Lawrence County*, 406 Fed.Appx. 619, 624 (3d Cir. 2011). Deliberate indifference requires more than mere negligence. *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). Deliberate indifference "requires obduracy and wantonness, which has been likened to conduct that includes recklessness or a conscious disregard of a serious risk." *Id.*

Here, it cannot be said that Defendants' decision to place Crissman, who had no prior history of violence, and had been a trustee during prior ACJ commitments without incident or problem, in the trustee program "shocks the conscience." Nor can it be said that Defendants were deliberately indifferent to a serious risk of harm to Ms. Long. Crissman was incarcerated on non-

violent charges and was known to ACJ personnel due to his prior incarcerations. There was no way for Defendants to know that, by making Crissman a trustee, they were somehow placing Ms. Long in harm's way. Accordingly, they were not deliberately indifferent and their decision cannot be said to shock the conscience.

### 3. There Was No Relationship Between The State And Tammy Long

"[T]he state-created danger theory of liability does not extend to 'those instances where the state action creates only a threat to the general population." *Morse v. Lower Merion School District*, 132 F.3d 902, 913 (3d Cir. 1997). "[T]he state-created danger theory is implicated in an action under § 1983 only where the state actor has created a danger to a 'discrete plaintiff' or to a 'discrete class of plaintiffs.'" *Id.* at 914.

"Residents in the communities surrounding [jails] are part of the 'public at large'… They cannot reasonably be characterized as individuals who defendants knew 'faced any special danger." *Commonwealth Bank & Trust Co., N.A. v. Russell*, 825 F.2d 12, 16 (3d Cir 1987); *see also, Henry v. Philadelphia Adult Probation and Parole Dept.*, No. 05-4809, 2007 WL 2670140 (E.D. Pa. Sept. 6, 2007).

In *Russell*, the Third Circuit affirmed the District Court's dismissal of a case with facts very similar to the present case wherein decedents were murdered by an escaped prisoner. In *Russell*, like the present case, the Plaintiff's alleged that the inmate was permitted to escape due to lax security and a failure to take greater precautions. In *Russell*, like is alleged in the present case, the escaped prisoner, murdered the decedents. In *Russell*, like the present case, Plaintiff's asserted a state-created danger claim. The District Court, later affirmed by the Third Circuit held that the escaped prisoner – like Inmate Crissman here – was not an agent of the state; that the correctional officials had no reason to believe that the decedents – like Tammy Long here – were

in any particular or greater danger than any other member of the public; and there was no 'special relationship' between the decedents and the County.  The Third Circuit noted that Plaintiffs made a 'sympathetic argument' that people who lived near the prison – like the decedents in *Russell* and Tammy Long here –  were at greater risk from escaped inmates; but that residents surrounding the prison are part of the 'public at large' to whom there is not special relationship or affirmative duty to protect. *Id.* at 16 (citing *Martinez v. California*, 444 U.S. 277, 285 (1980)). In sum, the Third Circuit held that while the end result of the prisoner's escape was a sad and tragic result, "defendants had no knowledge of danger particular to [the decedent], as distinguished from other members of the general public. Moreover, since the prisoner escaped, the causal nexus to defendants' actions is even more attenuated than in cases where the perpetrator of the subsequent crime has been intentionally released." *Id.* The Third Circuit held that their decision to reject the claim was in accord with other similar cases.

In *Fox v. Curtis*, 712 F.2d 84 (4th Cir 1983), which was citied approvingly by the Third Circuit in *Russell*, the Fourth Circuit held that the claimants – three females who were raped, brutally beaten and set on fire by a parolee - did not have an actionable state-created-danger claim as they "were simply members of the general public, living in the free society, and having no special custodial or other relationship with the state …. [T]he state agent defendants here were 'unaware that the [claimants] as distinguished from the public at large faced any special danger.'" *Id*. at 86.

Likewise, the Third Circuit in *Russell* also pointed to *Bowers v. DeVito*, 686 F.2d 616, 618 (7th Cir 1982) – case in which an released offender murdered a local resident -  holding that the "*Bowers* court accurately summarized the general state of the applicable law when it stated that there was no deprivation actionable under § 1983 because '[t]he defendants in this case did

not place [plaintiff's decedent] in a place or position of danger; they simply failed adequately to protect her, as a member of the public, from a dangerous man.'" *Id.* (quoting *Bowers*, 686 F.2d at 618.).

The decision in *Russell*, is in accord with several other reported decisions – including a decision of the Third Circuit in which state-created-danger claims were dismissed as a matter of law in tragic situations such as this. *See, e.g., Leidy v. Glenolden*, 117 Fed. Appx. 176 (3d Cir. 2004) (§1983 'special relationship' claim brought by relatives of victims raped and murdered against police officers who failed to arrest perpetrator dismissed as the victims were no more at risk than any member of the public, and officers did not know that perpetrator was capable of committing heinous crimes, much less that he was on the verge of doing so); *Humann v. Wilson*, 696 F.2d 783 (10th Cir. 1983) (dismissal of suit by plaintiff who was raped by community corrections inmate as no 'special relationship' existed between victim and correctional institution); *Janan v. Trammell*, 785 F.2d 557 (6th Cir. 1986) (County not held liable in suit brought when parolee murdered the wife of the officer who arrested him as no 'special relationship existed).

In the present case, Defendants did not place Ms. Long in a position of danger. At most, Defendants simply failed to protect her, as a member of the general public, from an escaped prisoner who had no prior history of violence. The Defendants were unaware that Ms. Long, as distinguished from the public at large, faced any 'special danger.' Rather, as per the cases above including *Russell* and *Bowers*, the fact that Ms. Long and Mr. Slagle resided in close proximity to ACJ does not create a 'special relationship' between Ms. Long and the Defendants. Accordingly, Plaintiff's claim fails as a matter of law.

In sum, while the death of Tammy Bowers is tragic, the case law is clear, that a cause of action, based on the facts of this case – no matter how sympathetic, is simply not legally viable. Rather as per the Third Circuits decisions in *Russell* and *Leidy*, and decisions by other Circuit Courts including *Bowers* (7th Cir), *Humann* (10th Cir.), and *Janan* (6th Cir.), the claim must be dismissed.

## B. MOTION TO STRIKE PORTIONS OF PLAINTIFF'S COMPLAINT PURSUANT TO FED. R. CIV. P. 12(f)

If the Complaint is not dismissed in its entirety, Defendants move to strike, pursuant to Federal Rule of Civil Procedure 12(f), Paragraphs forty (40) through forty-nine (49) of Plaintiff's Complaint on the grounds that these paragraphs contain immaterial, impertinent and irrelevant matter. Specifically, these paragraphs quote and reference post-incidents investigations undertaken at the request of County officials and in the nature of a subsequent remedial measure which are clearly inadmissible under F.R.E. 407.

"Under Rule 12(f) of the Federal Rules of Civil Procedure, 'the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent or scandalous matter.'" Blocker v. Community Educ. Centers, Inc., No. 13-5127, 2014 WL 1348958, at *3 (E.D. Pa. April 7, 2014) (slip copy). "The purpose of a motion to strike is to simplify the pleadings and save time and expense by excising from a plaintiff's complaint any redundant, immaterial, impertinent or scandalous matter which will not have any possible bearing on the outcomes of the litigation.'" Id. (quoting Garlanger v. Verbeke, 223 F.SUpp.2d 596, 609 (D.N.J. 2002). "Immaterial matter is that which has no essential or important relationship to the claim for relief…." Dombrowski v. Governor Mifflin School Dist., No. 11-1278, 2012 WL 2501017, at *1 (E.D. Pa. June 29, 2012) (quoting Conklin v. Anthou, No. 10-2501, 2011 WL 1303299, at *14 (M.D. Pa. Apr. 5, 2011)).

"The Federal Rules of Evidence expressly preclude the introduction of evidence of subsequent remedial measures to prove a party's negligence or culpable conduct. [Rule 407] provides that when measures are taken after an event, which would have made the event less likely to occur, evidence of the subsequent measures is not admissible to prove negligence at the event." *Hogan v. City of Easton*, 2006 WL 3702637, at *7 (E.D. Pa. 2007) (Padova, J.). Rule 407 is intended to "encourag[e] people to take or at least not discourage them from taking, steps in furtherance of added safety." *Petree v. Victor Fluid Power, Inc.,* 831 F.2d 1191, 1198 (3d Cir. 1987).

In *Hogan*, police defendants in an excessive force claim sought to preclude from consideration evidence of post-incident studies. *See* 2006 WL 3702637, at *7. Judge Padova held that the post-incident studies were inadmissible to prove "knowingly culpable conduct in connection with the event at issue." *Id.* at *8; *see also Grazier ex rel. White v. City of Phila.*, 2001 WL 1168093, at *2-3 (E.D. Pa. 2001) (Tucker, J.) (excluding post-incident changes in defendant police department's use of force directives as subsequent remedial measures).

Here, Plaintiff pleads facts related to two post-incident studies that were undertaken by Armstrong County in an effort to determine what steps, if any, could be taken to prevent similarly tragic situations from occurring in the future. These studies are subsequent remedial measures and cannot be used by Plaintiff to prove liability on the part of Defendants. Accordingly, they are irrelevant to the present case. If This Court declines to dismiss Plaintiff's case pursuant to Fed. R. Civ. P. 12(b)(6), paragraphs forty (40) through forty-nine (49) should be stricken from Plaintiff's Complaint.

## VI.  CONCLUSION

For the reasons set forth in detail above, Plaintiff's Complaint against Defendants should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6), with prejudice, for failure to state a claim upon

which relief may be granted. In the alternative, if This Court declines to dismiss Plaintiffs Complaint in its entirety, paragraphs forty (40) through forty-nine (49) should be stricken.

                                                  Respectfully Submitted,

Dated: January 8, 2016                 /s/ David J. MacMain
                                                David J. MacMain, Esquire
                                                Attorney ID # 59320
                                                The MacMain Law Group, LLC
                                                101 Lindenwood Drive, Suite 160
                                                Malvern, PA 19355
                                                dmacmain@macmainlaw.com
                                                Phone – (484) 318-7703

**CERTIFICATE OF SERVICE**

I, David J. MacMain, Esquire, hereby certify that on this 8th day of January, 2016, the foregoing was filed electronically and is available for viewing and downloading from the United States District Court of the Western District of Pennsylvania. The following was served via the ECF system:

George M. Kontos<br>
Katie A. Killion<br>
Kontos Mengine Law Group<br>
603 Stanwix Street<br>
Two Gateway Center, Suite 1228<br>
Pittsburgh, PA 15222<br>
*Attorney for Plaintiffs*

**THE MACMAIN LAW GROUP, LLC**

Dated: <u>January 8, 2016</u>       By:    <u>*/s/ David J. MacMain*</u>
                                            David J. MacMain
                                            Attorney I.D. No. 59320
                                            101 Lindenwood Drive, Suite 160
                                            Malvern, PA 19355
                                            *Attorney for Defendants, Armstrong County,*
                                            *d/b/a Armstrong County Jail and David Hogue*