IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TARA L. LONG and TODD J. LONG, Administrators of the Estate of TAMMY E. LONG, Deceased : : : : Plaintiff, : : v. : : ARMSTRONG COUNTY, d/b/a ARMSTRONG COUNTY JAIL and DAVID HOGUE : : : : Defendants. : | CIVIL ACTION NO. 15-cv-01447 (ELECTRONICALLY FILED) JURY TRIAL DEMANDED |

**DEFENDANTS REPLY BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

Defendants, Armstrong County, d/b/a Armstrong County Jail ("Armstrong County" or "ACJ") and David Hogue ("Hogue") (collectively, "Defendants"), by and through their attorneys, The MacMain Law Group, LLC, hereby file this Reply Brief in further support of their Motion to Dismiss (Doc. 9.) and in response to Plaintiffs' Brief in Opposition to Defendants' Motion to Dismiss. (Doc. 14.) Defendants incorporate by reference the arguments and authorities contained in their Brief in Support of their Motion to Dismiss ("Defendants' Brief") and file this Reply Brief to respond to specific arguments contained in Plaintiff's Response in Opposition.

**I.    ARGUMENT**

    **A.    RUSSELL HAS NOT BEEN OVERTURNED AND STILL PROVIDES GUIDANCE AS TO THE REQUIRED EXISTENCE OF SOME RELATIONSHIP BETWEEN THE STATE AND THE PLAINTIFF**

None of the cases cited by Plaintiffs expressly overturned Russell. In fact, Courts in this Circuit have continued to point to Russell in analyzing the "special relationship" and "foreseeable victim" prongs of the state created danger doctrine post-Morse, Kneipp. and Bright.

1

For example, the Eastern District pointed to <u>Russell</u> in <u>Henry v. Philadelphia Adult Probation and Parle Dept.</u>, 2007 WL 2670140, at *8 (E.D. Pa. Sept. 7, 2007). In <u>Henry</u>, Plaintiffs argued that their decedents were "foreseeable victims" because a convicted attempted burglar was placed on house arrest less than three miles from their home. Judge DuBois rejected this argument, relying, in part, on <u>Russell</u>.

While it may be true that cases like <u>Bright</u> and <u>Russell</u> expanded the third prong of the state created danger theory to include as foreseeable plaintiffs "members of a discrete class of persons subjected to the potential harm brought about by the state's action", as claimed by Plaintiffs, it did not expand that definition so far as to include as potential plaintiffs members of the community residing in the vicinity of a jail. A substantially similar proposition was expressly rejected in <u>Henry</u>.

> **B. MS. LONG DID NOT HAVE A SPECIAL RELATIONSHIP WITH THE STATE SUCH THAT THE STATE CREATED DANGER THEORY IS APPLICABLE**

For all of the reasons set forth in Defendants Brief, Ms. Long was a "member of the public in general" and not a member of "a discrete class of persons subjected to the potential harm brought about by the states' actions." Accordingly, the third prong of the state created danger theory is not met because Ms. Long did not have a special relationship with the state.

After attempting to discredit <u>Russell</u>, Plaintiffs rely heavily upon a Seventh Circuit case with facts that are dramatically different than those set forth in their Complaint. As noted by Plaintiffs', the Seventh Circuit explained in <u>Reed</u>, that when the police create a *specific danger*, they need not know who in particular will be hurt. Some dangers are *so evident, while their victims are so random*, that state actors can be held accountable by any injured party. Even if this Court were to find the Seventh Circuit's reasoning persuasive, the facts are distinguishable. In

2

Reed, the officers created the *specific danger* that the intoxicated driver would put area motorists at risk. Accordingly, application of the state created danger doctrine, under those specific facts, was reasonable. It is wholly unreasonable to conclude that all individuals residing within the vicinity of a jail have a similar special relationship with the state when an inmate escapes without warning.

The simple fact that Ms. Long resided in the vicinity of the Armstrong County Jail does not, on its own, create a relationship between Ms. Long and the state. For all of the reasons set forth in Defendants' Brief, Plaintiffs' claims must be dismissed because there was no special relationship between Ms. Long and the State.

### C. THE HARM TO MS. LONG WAS NEITHER FORESEEABLE NOR FAIRLY DIRECT

For all of the reasons set forth in Defendants' Brief, the harm to Ms. Long was neither foreseeable nor fairly direct and, accordingly, the state created danger theory does not apply. As discussed in greater detail in Defendants' Brief, there was simply no way for Defendants to foresee that their decision to place Crissman in the trustee program would result in the tragic death of Ms. Long.

Defendants' decision to place Crissman in the trustee program was separated from Ms. Long's death by multiple intervening circumstances that simply could not have been foreseen by Defendants. These intervening circumstances include: Crissman deciding to flee from the jail without warning; Crissman fleeing to the home of his acquaintances, Mr. Slagle and Ms. Long; Mr. Slagle and Ms. Long inviting Crissman into their home for several hours; Mr. Slagle leaving Crissman at home alone with Ms. Long; and Crissman allegedly deciding to take the life of Ms. Long. There is simply no way that Defendants' could have foreseen this as a possible

consequences of their decision to place Crissman in the trustee program and assign him to tray duty.

**D.     DEFENDANTS DID NOT ACT WITH A DEGREE OF CULPABILITY THAT SHOCKS THE CONSCIENCE**

Even if this Court were to find that Defendants should not have made Crissman an inmate trustee, their actions did not rise to the level of conscience shocking culpability. Plaintiffs assert in their Brief that Defendants' conduct "evidences a conscious disregard of a serious risk on the part of the Defendants." This, even if it were true, does not mean that Defendants' conduct "shocks the conscious" as the state-created danger theory requires. The simple act of conferring trustee status on an inmate, with whom they were familiar, simply does not "shock the conscious," even if, as Plaintiff asserts, it was done so erroneously. For all of the reasons set forth in Defendants' Brief, Defendants' did not act with a degree of culpability that shocks the conscience and, accordingly, the state created danger theory does not apply.

**E.     THE "PUBLIC FUNCTION" TEST DOES NOT APPLY**

In an attempt to survive Defendants' Motion to Dismiss, Plaintiff asserts in his Response in Opposition that, even if the state created danger theory does not apply, Crissman's alleged actions "are to be deemed those of a 'state actor.'" (Doc. 14 at 22.) This is based on Plaintiff's assertion that "the housing and maintenance of inmates, and the running of a jail, has been the exclusive prerogative of the state. As such, the jails conduct in performing such functions, and in deciding to make Crissman a functionary of the jail by bestowing trusty (sic) status upon him, made him a part of that system as it concerned the carrying out of the jails responsibilities.'" Id. Thus, according to Plaintiffs, Crissman was a "representative of the jail itself." Plaintiffs' assertion is based on a misrepresentation or misunderstanding of the law and the facts of this case.

4

It is incomprehensible that an inmate at a jail could be considered a state actor. Plaintiffs point to no authority to support the proposition that an inmate who is assigned duties while incarcerated is somehow transformed from inmate to state actor. Plaintiffs' theory would result in all inmate workers being transformed into state actors.

"Under the public function test, state action can be found only when 'the private *entity* has exercised powers that are traditionally the exclusive prerogative of the state.'" Graham v. City of Philadelphia, 2001 WL 1608230, at *6 (E.D. Pa. Jul, 17, 2002) (quoting Mark v. Borough of Hatboro, 51 F.3d 1137, 1142 (3d Cir 1995)). The public function test "imposes a 'rigorous standard' that is 'rarely … satisfied.'" Robert S. V. Stetson School, Inc., 256 F.3d 159, 165 (3d Cir 2001) (quoting Mark, 51 F.3d at 1142.). "While many functions have been traditionally performed by governments, very few have been 'exclusively reserved to the State." Id. (quoting Flagg Brothers Inc. v. Lefkowitz, 436 U.S. 149, 158, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978)). "Rare examples of traditional public functions include holding elections and exercising eminent domain." Graham, 2002 WL 1608230 at * 6.

"The critical issue … is whether the state, through its agents or laws, has established a formal procedure or working relationship that drapes private actors with the power of the state." Community Medical Center v. Emergency Medical Services of Northeastern Pennsylvania, Inc., 712 F.2d 878, 880 (3d Cir 1983)).  Crissman was not, by being placed on tray duty, "draped with the power of the state."

While Plaintiff explains the theory behind the public function test, he provides no legal basis for application of that test to the facts of this case. Plaintiff states, without citation to any legal authority, that "the housing and maintenance of inmates, and the running of a jail, has been the exclusive prerogative of the state. As such, the jails conduct in performing such functions,

5

and in deciding to make Crissman a functionary of the jail by bestowing trusty (sic) status upon him, made him a part of that system as it concerned the carrying out of the jails responsibilities." (Doc. 14 at 21-22.)

While it may be true that the running of a jail, including the housing and maintenance of inmates, is the exclusive prerogative of the state, Crissman was clearly not a state actor. Crissman was not involved in running the jail – he was tasked with the simple job of collecting trays from a truck and transporting them into the jail. There is no allegation in Plaintiffs' Complaint that Crissman was, in any way, involved in jail administration or operations. Accordingly, the public function test does not apply and Plaintiffs' Complaint should be dismissed

## II. CONCLUSION

For the reasons set forth in detail herein and in Defendants' Brief in support of their Motion to Dismiss, Plaintiff's Complaint against Defendants should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6), with prejudice, for failure to state a claim upon which relief may be granted.

                Respectfully Submitted,

Dated: January 29, 2016         /s/ David J. MacMain_____
                David J. MacMain, Esquire
                Attorney ID # 59320
                The MacMain Law Group, LLC
                101 Lindenwood Drive, Suite 160
                Malvern, PA  19355
                dmacmain@macmainlaw.com
                Phone – (484) 318-7703

**CERTIFICATE OF SERVICE**

I, David J. MacMain, Esquire, hereby certify that on this 29th day of January, 2016, the foregoing was filed electronically and is available for viewing and downloading from the United States District Court of the Western District of Pennsylvania. The following was served via the ECF system:

George M. Kontos
Katie A. Killion
Kontos Mengine Law Group
603 Stanwix Street
Two Gateway Center, Suite 1228
Pittsburgh, PA 15222
*Attorney for Plaintiffs*

**THE MACMAIN LAW GROUP, LLC**

Dated: <u>January 29, 2016</u>     By:     <u>*/s/ David J. MacMain*</u>
                                            David J. MacMain
                                            Attorney I.D. No. 59320
                                            101 Lindenwood Drive, Suite 160
                                            Malvern, PA 19355
                                            *Attorney for Defendants, Armstrong County,*
                                            *d/b/a Armstrong County Jail and David Hogue*